RECEIVED

DEC 19 2014

PRO SE OFFICE

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KRIS GOUNDEN,

          Plaintiff

     -against-

CITY OF NEW YORK, DETECTIVE
RAYMOND BROWN,
SCOTT STATLAND

          Defendants,

COMPLAINT
JURY TRIAL DEMANDED

CV 14   7411



BLOOM, M.J.

## PARTIES

[1]    Kris Gounden is at all times the victim who was assaulted, falsely and selectively

arrested, and, falsely and selectively imprisoned for the purpose of enforcing the City of

New York's unconstitutional policy of seizing private land in violation of the Charter of

the City of New York and in violation of Canal law and the State and Federal prohibitions

against using the power of eminent domain for private purposes under the guise of using

the City's Arbitral Capacity. Plaintiffs: 1 Bayview Ave, Queens N.Y

Address: 11414  ph: 718 810 7840 k

718 926 1782

## DEFENDANTS

[2]    The City of New York is at all times the defendant entity whose charter provision,

L. 1962, ch. 998; New York City Charter, § 202, prevents the City of New York from

deeming land public unless and until that land is mapped on the official City Acquisitions

Map and which selectively applies non-vehicular access requirements to plaintiff when

there are similarly situated home owners to whom those non-vehicular access requirements apply. *City's Address: Corporation Counsel, 100 Church St., N.Y., N.Y. 10007*

[3] Defendant Detective Raymond Brown is at all times the detective employed by the City of New York and was assigned to the 106th precinct in Queens, New York that fraudulently asserted that plaintiff's 911 call was not in the Sprint system and who disregarded defendant Scott Statland's video recorded admissions against interest of defendant Scott Statland in that defendant Scott Statland repeatedly slammed a car door into plaintiff's chest and legs and who failed to preserve plaintiff's 911 call after van police created a special relationship with plaintiff in a manner in which no reasonable officer would have. *Brown's: 106th Precinct, 103-63 101st, Address: Queens, N.Y. 11417*

[4] Defendant Scott Statland is at all times the defendant whose address is in the custody and control of defendant Det. Brown and the Office of the District Attorney, who signed a deposition supporting defendant Det. Brown's accusatory instrument alleging plaintiff's assault of defendant Scott Statland and defendant Scott Statland is the defendant whose own video records defendant Scott Statland repeatedly slamming a car door in plaintiff's chest and legs in an effort to provoke plaintiff into unauthorized physical contact with defendant Scott Statland and who falsely asserted that plaintiff unlawfully punched defendant Statland in the face and who falsely asserted that plaintiff unlawfully pushed defendant Statland. *Statland's: 106th Precinct, 103-63 Address: 101st, Queens, N.Y. 11417*

COMPETENCE AND VENUE

[5]     Under color of assault and harassment statutes [assault] the; false arrest, false

imprisonment, malicious prosecution, selective prosecution, false claim that plaintiff

assaulted defendant Statland and defendant Statland's assault of plaintiff took place in

Queens, New York, which is in the Eastern District of New York.

[6]     42 U.S.C. § 1983 provides a private right of action for victims of false arrest, false

imprisonment and malicious and selective prosecution by government officials in

violation of the Fourth Amendment

[7]     42 U.S.C. § 1331 the Court is provided with the competence to preside over a

private right of action for victims of false arrest, false imprisonment and malicious and

selective prosecution by government officials in violation of the Statutes of the State of

New York.

## TIMELINE

[8]     From 2006 until 2012 Jun 18, plaintiff police from the 106th precinct have

contacted, intimidated and arrested plaintiff and his agents for exertion dominion and

control over lot 162 at 1 Bayview Avenue, Howard Beach, Queens, New York.

[9]     On 2012 Jun 18 defendant Detective Raymond Brown arrested and charged

plaintiff, in the Criminal Court of the City of New York, Queens County, docket number

2012QN032967, with penal law violations of sections 120.00-1, Assault in the Third

Degree and 240.26-1 Harassment in the Second Degree.

[10]    On or about 2012 Jul 18 defendant Detective Brown physically arrested and

charged plaintiff [ although Det. Anthony Davis signed the accusatory instrument] in the

Criminal Court of the City of New York, Queens County, docket number

20132012QN038341, with a penal law violation of section 215.50-3, Criminal Contempt

in the Second Degree for allegedly telling defendant Statland " This is not over

motherfucker."

[11]   On 2013 Oct 21 the charges on the defendant Det. Brown's underlying assault and

harassment charges were dismissed in plaintiff's favor on speedy trial provisions.

[12]   Plaintiff did not make a speedy trial provision motion.

[13]   Plaintiff was prepared at all times to go to trial.

[14]   Part of the delay was due to the Court constantly requiring plaintiff to prove his

indigence repeatedly, without the District Attorney's objection on speedy trial grounds

although the D.A.'s Office was aware that plaintiff had already and repeatedly provided

proof of his indigence.

[15]   Another part of the delay were legal aid attorney Erica Holder's , 18-b attorney

Daria Armand's and 18-b attorney Stephen Guardio's refusals to call defendant Statland

as a witness.

[16]   The D.A.'s Office informed plaintiff's legal aid attorney Erica Holder that it did

not intend to call defendant Statland as a witness in the trial.

[17]   The D.A.'s Office's intention, as part of defendant Det. Brown's prosecution, not

call defendant Statland was an announced intention of defendant Det. Brown to violate

plaintiff's Sixth Amendment entitlement to face his accuser under the Confrontation

Clause at a public trial.

[18]   The " Confrontation " delay occurred as a result of plaintiff's vehement objections to the several attorney's intention and strategy to forfeit plaintiff's Confrontation right at trial.

[19]   These several attorney's refusd to agree to call defendant Statland as plaintiff's witness under the presumed innocent's Sixth Amendment right to call witnesses in plaintiff's favor.

[20]   Defendant Statland's criminal trial testimony would have been in plaintiff's favor because defendant Statland's testimony about defendant Statland's video of defendant Statland repeatedly approaching plaintiff and slamming plaintiff's car door into plaintiff would have established defendant Statland as the aggressor approaching plaintiff and slamming a car door into plaintiff as an attempt to provoke plaintiff into making unauthorized contact with defendant Statland.

[21]   Intentionally blank

[22]   Plaintiff's several legal aids' intentions to refuse to call defendant Statland as plaintiff's witness amounted to plaintiff's several legal aids' collective intention to proceed to trial on the strategy of directly forfeiting plaintiff's Sixth Amendment right to face his accuser while also intending to forfeit plaintiff's Sixth Amendment entitlement to face his accuser under plaintiff's Sixth Amendment right to call witnesses in plaintiff's favor, namely, a witness plaintiff had a right to confront.

[23]   The delay was, in part, caused by a case that was dismissed on speedy trial grounds because the presumed innocent refused to submit to a strategy that involved the presumed innocent's direct forfeiture of his Sixth Amendment right to face his accuser.

[24]   None of plaintiff's legal aid attorneys made or intended to make a motion to dismiss the complaint on the ground that the D.A.'s Office intended not to call an available defendant Statland.

[25]   None of plaintiff's legal aid attorneys, while in the well, denied their strategy to directly and indirectly forfeit plaintiff's legal Confrontational entitlements at trial.

[26]   The dismissal of defendant Det. Brown's criminal contempt charge was subsumed in the dismissal of defendant Det. Brown's underlying assault and harassment charges.

[27]    On 2014 Jan 06 plaintiff filed a notice of claim. By letter dated 2014 Jan 09, the City of New York, by Anastasia Perez a Personal Injury Division Examiner, contacted plaintiff and, under the provisions of 50-h, conducted an inquiry of plaintiff's claims.

[28]   On or about 2012 Jun 12 plaintiff's vehicle was stopped at a stop sign at the southwest corner of 160th avenue and 102nd street in Howard Beach, Queens, New York with plaintiff's son in the back seat of these vehicle.

### FACTS

[29]   As plaintiff was stopped at the sign plaintiff saw defendant Statland emerge from the Office of State Senator Joseph Addabbo located near the northeast corner of 102nd Street and 160th Avenue.

[30]   Joseph Addabbo, as a Councilman, declared to plaintiff in 2006, and to defendant Statland, on or before 2012 Jun 12, that of lot 162 was the property of the City of New York.

[31]   The City of New York itself then adopted Councilman Addabbo's declaration that part of lot 162 was eased upon or the property of the City of New York or both.

[32]   At the time Mr. Addabbo declared to defendant Statland and at the time that the City of New York later joined in and supported Mr. Addabbo's declaration that part of lot 162 was eased upon or the property of the City of New York, both Addabbo and the City of New York were fully and functionally aware that L. 1962, ch. 998; New York City Charter, § 202 read:

"    No street, avenue, highway or public place, the layout of which has not been approved as provided in this section, shall be deemed to have been accepted by the city of New York as a street, avenue, highway or public place, unless such street, avenue, highway or public place shall lie within the lines of a street, avenue, highway or public place shown upon the duly adopted and filed final maps of the city of New York."

[33]   It was bad-faith for the City of New York, in its arbitral capacity, and Councilman Addabbo, in his arbitral capacity, to declare a part of lot 162 as eased upon or the property of the City of New York in spite of their awarenesses of L. 1962, ch. 998; New York City Charter, § 202.

[34]    Councilman Addabbo's and the City of New York's declaration that an area

of lot 162 was the property of the City of New York led defendant Statland to

falsely assert that defendant Statland was not trespassing plaintiff's property in

order for defendant Statland to reach his home by vehicle.

[35]    In addition the City of New York relied on the fraudulent and perjurious

under oath affirmation of Michael DiViernio that he observed the City of New

York providing services to part of lot 162 in *Gounden v City of New York*, 10 cv

3438, EDNY, [BMC] to claim that lot 162 was eased upon under Town Highway

Law § 189.

[36]    In addition, the City of New York is permitting Christopher Jones to fence in

the light pole in lots 782 and 781 along the real Broadway and the deeds to lots 782

and 781 have no light pole in the deed.

[37]    The City of New York presently permitting Christopher Jones to steal the

real Broadway which encouraged defendant Statland to believe that the City of

New York would support whatever he did to erode plaintiff's resources in

combating defendant Statland's vehicular trespass access to defendant Statland's

home or apartment.

[38]   Since 2006, plaintiff has had numerous contacts with police officers from the 106th precinct regarding neighbors' trespasses and plaintiff's attempt to express control and dominion over the entire area of lot 162.

[39]   The City of New York has instituted a lawsuit against plaintiff claiming part of lot 162 is eased upon as a public street.

[40]   Plaintiff and the nature of plaintiff's border dispute with neighbors, including defendant Statland, are generally known to the 106th precinct.

[41]   On 2012 Jul 12 the nature of plaintiff's border dispute with neighbors, including defendant Statland, were generally known to defendant Det. Brown.

[42]   The City of New York's false declaration that part of lot 162 was the property of the City of New York gave defendant Statland an arguable but false basis upon which to execute his plan to provoke plaintiff into striking defendant Statland and have plaintiff falsely arrested, convicted and imprisoned for assault.

[43]   On 2012 Jul 12 defendant Statland observed and told defendant Det. Brown that defendant Statland observed plaintiff and told defendant Det. Brown that defendant Statland walked across the street and approached plaintiff's vehicle. Defendant Statland began filming plaintiff.

[44]   Statland's video begins with and revealed to defendant Det. Brown that defendant Statland was inches from plaintiff's car, and plaintiff outside plaintiff's car and defendant Statland telling plaintiff that plaintiff is raising a " 5 year old fucking piece of garbage ".

Plaintiff's son was in the car when defendant Statland repeatedly made loud, profane and vulgar references to plaintiff's son.

[45]    Defendant Statland's video reveals that at all times, defendant Statland was too close to plaintiff's car for plaintiff to move plaintiff's car without plaintiff possibly hitting defendant Statland.

[46]    Plaintiff was imprisoned by defendant Statland.

[47]    At 45 seconds of defendant Statland's video, as plaintiff was retreating into plaintiff's vehicle, defendant Statland slams plaintiff's car door into plaintiff's chest and legs preventing plaintiff from entering plaintiff's vehicle.

[48]    Defendant Statland's own video records plaintiff in response emerging from plaintiff's vehicle and repeatedly telling defendant Statland " Get away from me."

[49]    Defendant Statland video records defendant Statland asking plaintiff " Are you going to take a swing at me?

[50]    Defendant Statland then immediately orders plaintiff: " Hit me ". " Go ahead and hit me. "

[51]    Defendant Det. Brown reviewed defendant Statland's video very carefully.

[52]    It was unreasonable for defendant Detective Brown to have concluded, on the basis of defendant Statland's video, that defendant Statland had been unlawfully punched in the face by plaintiff when defendant Statland, clearly the aggressor, approached plaintiff from across the street and defendant Statland's own video recorded defendant

Statland slamming a car door into plaintiff after which defendant Statland repeatedly demanded, without apparent success, that plaintiff swing and hit defendant Statland.

[53] It was unreasonable for defendant Detective Brown to have concluded, on the basis of defendant Statland's video, that defendant Statland had been unlawfully pushed by plaintiff when defendant Statland, approached plaintiff, and as plaintiff was retreating into plaintiff's car, defendant Statland slammed a car door into plaintiff and plaintiff emerged constantly telling defendant Statland to " Get away from me."

[54] No reasonable officer, on the basis of defendant Statland's video, would have overlooked defendant Statland's loud, aggressive, profane and scandalous language about a child in the child's presence nor would any reasonable officer have overlooked defendant Statland's unprovoked assaults on plaintiff with a car door in arriving at the conclusion that plaintiff either unlawfully pushed or punched defendant Statland,

[55] To wit, no reasonable officer would have overlooked defendant Statland blocking plaintiff's car by standing inches from it and refusing to move.

[56] Eventually, on 2012 Jul 12, after defendant Statland's repeated videotaped assault on plaintiff, plaintiff reached 1 Bayview Avenue, Howard Beach, N.Y. 11414 and called 911 to report defendant Statland's assault.

[57] Plaintiff made a successful 911 call from 718 810 7840 at 2:39 p.m on 2012 Jul 12.

[58] Plaintiff has a picture of his phone's call to 911 from 718 810 7840 at 2:39 p.m on 2012 Jul 12.

[59]   A police van responded to plaintiff's assault call on 2012 Jul 12.

[60]   The police van identification number was 8631 of the 106th precinct and the interview was, in part, video recorded.

[61]   Plaintiff offered to show the van police plaintiff's video of Statland's assault.

[62]   The van police refused to look at plaintiff's video of Statland's assault.

[63]   Police in van 8631 eventually knocked on defendant Statland's door but defendant Statland did not answer.

[64]   The van police left and never returned or contacted plaintiff on their progress, if any, on their investigation of defendant Statland's assault and harassment of plaintiff.

[65]   The van police filed a report reporting their response to plaintiff's 911 call.

[66]   The report the van police filed in response to plaintiff's 911 call was retrievable to defendant Det. Brown.

[67]   Defendant Det. Brown read the report the van police filed in response to plaintiff's 911 call on 2012 Jul 12 at 2:39 pm.

[68]   Unknown to plaintiff at 3:30 pm on 2012 Jul 12, defendant Statland reported to police that plaintiff assaulted and harassed defendant Statland.

[69]   Defendant Statland gave his phone to defendant Det. Brown on 2012 Jul 12.

[70]   Statland's phone had Statland's video of Statland's assault and harassment of plaintiff.

[71]   Defendant Det. Brown had an opportunity to and did review defendant Statland's video during the six days from 2012 Jul 12 until 2012 Jul 18. On or about 2012 Jul 18

defendant Det. Brown called plaintiff and requested plaintiff's presence in a criminal investigation.

[72]    Upon arriving at the 106th precinct and before defendant Det. Brown commenced an interview of plaintiff, defendant Det. Brown took possession of plaintiff's phone.

[73]    During defendant Det. Brown's interview of plaintiff, plaintiff related the events of 2012 Jul 12 to defendant Det. Brown.

[74]    During defendant Det. Brown's interview of plaintiff, plaintiff informed defendant Det. Brown that plaintiff called 911 on 2012 Jul 12 and that officers responded.

[75]    During defendant Det. Brown's interview of plaintiff, plaintiff informed defendant Det. Brown that plaintiff called 911 from phone defendant Det. Browns had confiscated from plaintiff before the interview began.

[76]    The number of plaintiff's phone in defendant Det. Brown's possession was 718 810 7840 on 2012 Jul 18

[77]    During defendant Det. Brown's interview of plaintiff, plaintiff informed defendant Det. Brown that plaintiff recorded the officers' interview of plaintiff that responded to plaintiff's 911 call.

[78]    Defendant Det. Brown informed plaintiff that plaintiff's 911 call was not in the system.

[79]    911 calls are automatically retained by the 911 system for three months.

[80]    The audio of plaintiff's 911 call was in the 911 electronic recording system from 2012 Jul 12 until the next ninety days.

[81]    The Sprint report of plaintiff's call at 2:38 p.m. on 2012 Jul 12 is in the electronic recording system right now.

[82]    Defendant Det. Brown had a duty to preserve the audio of plaintiff's 911 call since defendant Det. Brown was conducting an investigation and since plaintiff claimed there was exculpatory evidence and evidence of an assault on plaintiff in the custody of the Police Department of the City of New York.

[83]    No reasonable police officer, in possession of the cell phone, would have failed to search a seized phone, offered by a suspect, for a record of a 911 call a week earlier as evidence supporting a complainant's [Kris Gounden] charge of assault.

[84]    No reasonable police officer, having the phone from which a 911 call itself was made would say a 911 call made a week earlier, in the phone's record bank, was not in the Sprint system.

[85]    Defendant Det. Brown lied when defendant Det. Brown told plaintiff that plaintiff's 911 call, to which van 8631 responded, was not in the system.

[86]    Without preserving exculpatory 911 evidence, falsely claiming plaintiff made no 911 call [ which implied that police van 8631 of the 106th precinct did not respond to plaintiff's 911 call], without considering the evidence gathered by the van police, without examining plaintiff's video of Statland's assault, overlooking defendant Statland's assault on plaintiff on defendant Statland's own and overlooking defendant Statland imprisoning plaintiff on a public street on defendant Statland's own video, defendant Det. Brown

unreasonably, and without probable cause, arrested, imprisoned and initiated a prosecution against plaintiff for assault and harassment.

[87]   In that defendant Statland's video clearly showed defendant Statland's assault on plaintiff and in that plaintiff informed defendant Det. Brown that defendant Det. Brown had another video of defendant Statland's assault of plaintiff in defendant Det. Brown's possession, defendant Det. Brown was responsible for knowing what relevant information was in defendant Det. Brown's possession.

[88]   Plaintiff's video starts earlier than defendant Statland's video starts.

[89]   Plaintiff's video starts to record defendant Statland while plaintiff is seated in the driver's seat in plaintiff's vehicle and while defendant Statland is inches from the driver's side window of plaintiff's vehicle and while plaintiff's son is in the back seat of plaintiff's vehicle.

[90]   Plaintiff would have injured defendant Statland had plaintiff drove off with defendant Statland inches from plaintiff's vehicle.

[92]   Plaintiff's video begins with defendant Statland at plaintiff's driver's side window and loudly and threateningly, while leaning into the window, referring to plaintiff's son as a " mail thief ".

[93]   Plaintiff's video recorded defendant Statland stating that he didn't care that plaintiff's son was in the back seat.

[94]   Plaintiff's son was becoming alarmed at defendant Statland's aggressive and profane behavior.

[95]    While plaintiff is in the driver's seat, and before both were ever face to face on that day, plaintiff's video records defendant Statland repeatedly stating to plaintiff: " You're going to jail. " ! " You're going to jail. "! " You're going to jail. "!

[96]    Any reasonable officer would have interpreted defendant Statland slamming a car door into plaintiff and repeating " Go ahead hit me." and defendant Statland's repeated prediction that plaintiff was "...going to jail..." as defendant Statland's intention and plan to provoke/entrap plaintiff into assaulting or pushing defendant Statland for the express purpose of imprisoning plaintiff.

[97]    Slamming a car door into someone for the expressed purpose of imprisoning someone is not only the crime of assault in an of itself, but unlawful imprisonment since plaintiff could not move his car with defendant Statland standing inches from the vehicle in the middle of an officially mapped street, but the slamming of the car door is in the very nature of entrapment.

[98]    Even if it is believed that plaintiff pushed defendant Statland, such a push could equally be seen as either self-defense or entrapment or plaintiff's lawful attempt to free plaintiff from defendant Statland's unlawful imprisonment of plaintiff.

[99]    In plaintiff's video defendant Statland claims plaintiff's property is public.

[100]   Plaintiff claims plaintiff's property is private and that Statland trespasses every time defendant Statland drives his vehicle over plaintiff's property.

[101]   In defendant Statland's own video, defendant Statland's is standing in the middle of an officially mapped and indisputable public vehicular street and defendant Statland

states, on his own video, that he has a right to stand in the middle of an officially mapped and indisputable public vehicular street. Statland was not charged with unlawful imprisonment.

[102]  Plaintiff was arrested and charged with unlawful imprisonment for having not moved his vehicle from the middle of an alleged public vehicular street in People v Gounden, Index No. 2013QN054936, Queens County.

[103]  Posr A. Posr was arrested and charged with unlawful imprisonment for having not moved plaintiff's vehicle from the middle of an alleged public vehicular street in People v Posr, Index No. 2013QN043991, Queens County.

[104]  The City of New York permitting Christopher Jones, lots 782 and 781, to enclose City property and close off Broadway, the City of New York's knowledge and failure to respond to Michael DiViernio perjured affidavit in the City's attempt to deem unmapped land public in violation of the City Charter, the District Attorney's knowledge that Christopher Jones has enclosed lots 782 and 781 and taken over City property without action, Gounden's civil lawsuits against the City of New York for taking his land as City property or eased upon, Councilman, now Senator, Addabbo announcing to plaintiff that Gounden's property is City property, numerous police and fire contacts regarding the property, numerous arrests over the property, defendant Statland's and plaintiff's disputes over trespass on the property, previous prosecutions over the public or private nature of the property, the dismissal of the prosecution against Posr while the prosecution against Gounden continued, all suggest the possibility that Gounden has been targeted by the

Queens D.A.'s Office, the City and the 106th precinct with the goal of draining Gounden's resources and ability to recover for the unlawful occupation of his land.

[105]  Neither defendant Statland's or plaintiff's video ever records defendant Statland saying in sum or or substance or by inference " You hit me. " or even " Ow!".

[106]  After defendant Statland first car-door assault, plaintiff's video reveals that plaintiff again attempted to retreat into plaintiff's car.

[107]  Defendant Statland again slams plaintiff's car door into plaintiff.

[108]  Even after defendant Statland's second series of assaults, there is absolutely no verbal or visual evidence of plaintiff punching defendant Statland.

[109]  There is also no clear evidence that plaintiff pushed defendant Statland after defendant Statland's second wave of car door assaults.

[110]  Plaintiff left the area, arrived at plaintiff's home at ! Bayview Avenue, Howard Beach, New York, 11414 and called 911.

[111]  Defendant Det. Brown had viewed defendant Statland's video.

[112]  On or about 2012 Jul 18, after having viewed defendant Statland's video, plaintiff received a phone call from defendant Det. Brown.

[113]  In defendant Det. Brown's phone call, defendant Det. Brown informed plaintiff that defendant Det. Brown wanted plaintiff to appear at the station house concerning a criminal investigation.

[114]  At the precinct defendant Det. Brown inquired of plaintiff what happened on the date of 2012 Jul 22nd of the year .

[115]   In relating plaintiff's version of the occurrences, plaintiff informed defendant Det. Brown that plaintiff had called police to report defendant Statland's assault on plaintiff.

[116]   It would have been objectively reasonable for defendant Det. Brown to have investigated the previous officer's report of assault to gather officially recorded facts before arresting plaintiff.

[117]   Defendant Det. Brown was not interested in exhibiting objectively reasonable behavior.

[118]   Although plaintiff's 911 call was still in the Sprint 911 system, although defendant Det. Brown knew plaintiff's 911 call was still in the Sprint 911 system and although Det. Brown had easy access to the Sprint 911 system, Det. Brown falsely claimed plaintiff's call was not in the system knowing that if defendant Brown did not look, defendant Brown could claim he had not reviewed plaintiff's report of assault.

[119]   Defendant Det. Brown also falsely inferred that the officers who investigated plaintiff's 911 call had made no report of their investigation.

[120]   After having seen defendant Statland's video that incriminated defendant Statland and that constituted an admission against interest by and against defendant Statland for defendant Statland's assault on plaintiff, defendant Det. Brown did not want to see more evidence of defendant Statland's assault of plaintiff because defendant Det. Brown was trying to enforce defendant Statland's plan to continue trespassing plaintiff's property by the false arrest, conviction and imprisonment of plaintiff in order to erode plaintiff's fight against the City of New York's false declaration of an easement on plaintiff's land.

[121]  In relating plaintiff's version of the occurrences, plaintiff informed defendant Det. Brown that plaintiff had, on his person, in plaintiff's phone, a video recording of the occurrence.

[122]  Defendant Det. Brown, before arrest, did not want to examine plaintiff's video, although defendant Det. Brown examined defendant Statland's video.

[123]  There was no pressing emergency that required defendant Det. Brown to arrest plaintiff immediately.

[124]  Between 2012 Jul 12 and 2012 Jul 18 defendant Det. Brown studied defendant Statland's video tape and complaint.

[125]  On 2012 Jul 05, *People v Gounden,* Index no. 2012QN038341, Criminal Court, City of New York, defendant Statland complained to defendant Det. Brown that plaintiff violated an Order of Protection directing plaintiff to stay away from defendant Statland.

[126]  Defendant Statland's complaint, that plaintiff violated the Order of Protection, was made to defendant Det. Brown but defendant Det. Brown's partner, Det. Anthony Davis, signed the arrest the accusatory instrument.

[127]  Defendant Det. Brown asked his partner to make the arrest on the contempt of Court Order.

[128]  Defendant Det. Brown asked his partner to sign the arrest so that it would not appear that defendant Det. Brown had any role in arresting plaintiff for contempt of court stemming from charges in an assault case where the assault on plaintiff was captured on

video tape as perpetrated by the defendant-Statland and as selectively ignored by defendant Det. Brown.

[129]  Defendant Det. Brown knew there was no probable cause for arresting plaintiff for assault and defendant Det. Brown knew the basis of the contempt charge, the assault charge, was also without probable cause.

[130]  Plaintiff was seized, incarcerated and prosecuted on criminal contempt charge, which itself rested on the false basis of an assault charge.


## AS AND FOR A FIRST CAUSE OF ACTION

[131]  Plaintiff reiterates paragraphs 1 to 132 as and if restated here in full and completely and sues the City of New York for a permanent injunction against the City of New York deeming any part of lot 162 a public area until and unless such deeming complies with L. 1962, ch. 998; New York City Charter, § 202, which requires areas deemed public by the City of New York to be placed on the official acquisitions map of the City of New York, under procedures defined in the Eminent Domain Procedure law.

## AS AND FOR A SECOND CAUSE OF ACTION
## STATE FALSE ARREST

[132]  Plaintiff reiterates paragraphs 1 to 133 as and if restated here in full and completely and sues defendant Det. Brown for false arrest for assault without probable cause in the amount of $200,000 for State prohibitions against false arrest

## AS AND FOR A THIRD CAUSE OF ACTION
### Punitive Damages on State False Arrest

[133]  Plaintiff reiterates paragraphs 1 to 134 as and if restated here in full and

completely and sues defendant Det. Brown for punitive damages in the amount of

$500,000.00 in that Det. Brown's false arrest for assault without probable cause clearly

violated Police Department Policy in [a] dismissing plaintiff's video tape of the Van

police's investigation of plaintiff's 911 complaint of assault without examining plaintiff's

video evidence of the Van Police's interview, [b] dismissing plaintiff's 911 complaint of

assault without examining or investigating plaintiff's video taped evidence of the assault,

[c] Falsely claiming that plaintiff's 911 call was not in the system when the van police

arrived in response to the 911 call in the system and asked plaintiff if plaintiff made the

911 call on plaintiff's video and [d] for disregarding Statland's video taped evidence of

Statland's assault of plaintiff yet charging plaintiff for assault on Statland that clearly did

not occur on Statland's video tape.

## AS AND FOR A FOURTH CAUSE OF ACTION
### FEDERAL FALSE ARREST

[134]  Plaintiff reiterates paragraphs 1 to 135 as and if restated here in full and

completely and sues defendant Det. Brown for false seizure for assault without probable

cause in the amount of $200,000 and in the amount of $200,000 for Federal prohibitions

against false arrest.

## AS AND FOR FIFTH CAUSE OF ACTION
### FEDERAL FALSE ARREST
#### Punitive Damages on Federal False Arrest

[135] Plaintiff reiterates paragraphs 1 to 136 as and if restated here in full and completely and sues defendant Det. Brown for punitive damages in the amount of $500,000.00 in that Det. Brown's false arrest for assault without probable cause clearly violated Police Department Policy as stated in the Fourth Cause of Action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### STATE FALSE IMPRISONMENT

[136] Plaintiff reiterates paragraphs 1 to 139 as and if restated here in full and completely and sues defendant Det. Brown for false imprisonment in the amount of $200,000 for State prohibitions against false imprisonment under color of the assault statutes of the State of New York.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Punitive Damages for State False Imprisonment

[137] Plaintiff reiterates paragraphs 1 to 138 as and if restated here in full and completely and sues defendant Det. Brown for punitive damages in the amount of $500,000.00 in that Det. Brown's falsely imprisoned plaintiff for assault without probable cause as stated in the Fourth Cause of Action.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### FEDERAL FALSE IMPRISONMENT

[138] Plaintiff reiterates paragraphs 1 to 139 as and if restated here in full and completely and sues defendant Det. Brown for federal protections against false

imprisonment in the amount of $200,000 under color of the assault statutes of the State of New York.

## AS AND FOR A NINTH CAUSE OF ACTION
### Punitive Damages for Federal False Imprisonment

[139]  Plaintiff reiterates paragraphs 1 to 140 as and if restated here in full and completely and sues defendant Det. Brown for federal punitive damages in the amount of $500,000.00 in that Det. Brown's falsely imprisoned plaintiff for assault without probable cause as stated in the Fourth Cause of Action.

## AS AND FOR A TENTH CAUSE OF ACTION
### State Malicious Prosecution

[140]  Plaintiff reiterates paragraphs 1 to 141 as and if restated here in full and completely and sues defendant Det. Brown for initiating and continuing a prosecution for assault, without cause to believe an assault on Statland was committed by plaintiff, all in the face of a video recording revealing that defendant Statland assaulted plaintiff with a car door several times, in the amount of $300,000 for State prohibitions against malicious prosecution.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### Punitive Damages for State Malicious Prosecution

[141]  Plaintiff reiterates paragraphs 1 to 142 as and if restated here in full and completely and sues defendant Det. Brown for punitive damages for defendant Det.

Brown's initiation and continuation of a prosecution for assault, without cause to believe an assault on Statland was committed by plaintiff, and in reckless and callous disregard of Statland's own video recording revealing that defendant Statland assaulted plaintiff with a car door several times and in reckless and callous disregard of plaintiff's 911 call, interview with other officers who responded to plaintiff's 911 call and in reckless and callous disregard of plaintiff's video recording revealing that defendant Statland had announced, planned and predicted plaintiff was going to jail, and in the amount of $600,000 for State prohibitions against malicious prosecution.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### STATE SELECTIVE AND DISCRIMINATORY PROSECUTION

[142] Plaintiff reiterates paragraphs 1 to 142 as and if restated here in full and completely and sues defendant Det. Brown for initiating and continuing a selective and discriminatory prosecution for assault in that defendant Det. Brown:

[a] Overlooked a total lack of video evidence of plaintiff's assault on defendant Statland on Statland's video,

[b] Overlooked evidence to a mathematical certainty of defendant Statland's several assaults on plaintiff with a car door,

[c] Overlooked plaintiff's 911 call and the officers who responded to that call and those officers' interview of plaintiff complaint that Statland assaulted plaintiff,

[d] Overlooked plaintiff's evidence that Statland predicted a premeditated intention to provoke plaintiff to assault for the premeditated purpose of incarcerating plaintiff,

[e] Overlooked plaintiff alerting defendant Det. Brown that defendant Statland motive in incarcerating plaintiff was so that defendant Statland could use plaintiff's private land as a public street,

[f] "With an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances" , discriminated and selected plaintiff for prosecution for assault for the illegal purpose of knowingly enforcing the City of New York's lawless confiscation of plaintiff's private property in that it was common knowledge at the 106th precinct that numerous police contacts, including arrests, plaintiff has been arrested had an ongoing fight with the City over the City taking plaintiff's private land in direct violation of, among other State laws, L. 1962, ch. 998; New York City Charter, § 202 which prevents the City of New York from deeming land public unless and until that land is mapped on the official City Acquisitions Map in the amount of $300,000.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### PUNITIVE DAMAGES STATE SELECTIVE/DISCRIMINATORY PROSECUTION

[143]  Plaintiff reiterates paragraphs 1 to 143 as and if restated here in full and completely and sues defendant Det. Brown for punitive damages in initiating and continuing a selective, discriminatory and unequal prosecution for assault as described in the Twelfth Cause of Action in the amount of $600,000.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### FEDERAL SELECTIVE/DISCRIMINATORY PROSECUTION

[144]  Plaintiff reiterates paragraphs 1 to 144 as and if restated here in full and

completely and sues defendant Det. Brown for damages for violating plaintiff's federal

protections against initiating and continuing a selective prosecution in the amount of

$300,000 for violations of Federal prohibitions against selective prosecution

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
PUNITIVE DAMAGES FEDERAL SELECTIVE/DISCRIMINATORY PROSECUTION

[145]  Plaintiff reiterates paragraphs 1 to 145 as and if restated here in full and

completely and sues defendant Det. Brown for continuing a selective or malicious

prosecution in violation of plaintiff's federal protections against uneven and selective

prosecutions and in the amount of $600,000.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
STATE FALSE ARREST CRIMINAL CONTEMPT

[146]  Plaintiff reiterates paragraphs 1 to 146 as and if restated here in full and

completely and sues defendant Det. Brown for false arrest in the amount of $300,000 for

a false arrest on a charge of criminal contempt which was based on an assault the video

taped event of which demonstrates plaintiff as the person who was assaulted and

unlawfully imprisoned on a public street by defendant Statland.

### AS AND FOR A SEVENTEENTH CAUSE OF ACTION
PUNITIVE DAMAGES STATE FALSE ARREST CRIMINAL CONTEMPT

[147]  Plaintiff reiterates paragraphs 1 to 146 as and if restated here in full and completely and sues defendant Det. Brown in the punitive amount of $600,000 for a false arrest on a charge of criminal contempt which was based on an assault the video taped event of which demonstrates that it was plaintiff who was assaulted and unlawfully imprisoned on a public street by defendant Statland

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION
### FEDERAL FALSE ARREST

[148]  Plaintiff reiterates paragraphs 1 to 147 as and if restated here in full and completely and sues defendant Det. Brown for false arrest, in violation of Fourth Amendment protections against unauthorized seizure, in the amount of $ 300,000 on a charge of criminal contempt which was based on the factual representations described in the Sixteenth Cause of Action.

## AS AND FOR A NINETEENTH CAUSE OF ACTION
### PUNITIVE DAMAGES FEDERAL FALSE ARREST CRIMINAL CONTEMPT

[149]  Plaintiff reiterates paragraphs 1 to 148 as and if restated here in full and completely and sues defendant Det. Brown in the punitive amount of $600,000 for a false arrest on a charge of criminal contempt which was based on an assault the video taped event of which demonstrates that it was plaintiff who was assaulted and unlawfully imprisoned on a public street by defendant Statland

## AS AND FOR A TWENTIETH CAUSE OF ACTION

Statland Malicious Prosecution

[150]  Plaintiff reiterates paragraphs 1 to 149 as and if restated here in full and

completely and sues defendant Statland for initiating a prosecution for assault, without

cause to believe an assault on Statland was committed by plaintiff, all in the face of a

video recording revealing that defendant Statland assaulted plaintiff with a car door

several times, in the amount of $100,000 for prohibitions against malicious prosecution.

## AS AND FOR A TWENTIFIRST CAUSE OF ACTION
### PUNITIVE DAMAGES STATLAND MALICIOUS PROSECUTION

[151]  Plaintiff reiterates paragraphs 1 to 150 as and if restated here in full and

completely and sues defendant Statland for initiating a prosecution for assault, without

cause to believe an assault on Statland was committed by plaintiff, all in the face of a

video recording revealing that defendant Statland assaulted plaintiff with a car door

several times, in the punitive amount of $100,000 for prohibitions against malicious

prosecution.

## AS AND FOR A TWENTISECOND CAUSE OF ACTION
### SCOTT STATLAND MALICIOUS ABUSE OF CRIMINAL PROCESS

[152]  Plaintiff reiterates paragraphs 1 to 151 as and if restated here in full and

completely and sues defendant Scott Statland in the amount of $100,000 for malicious

abuse of criminal process in that defendant Statland calculatedly assaulted plaintiff for

the express purpose of provoking a physical confrontation with plaintiff's such that the

provocation would result in plaintiff's seizure, incarceration and prosecution because

defendant Statland wanted to stop plaintiff from filming defendant Statland and defendant

Statland wanted to stop plaintiff from expressing control and dominion over plaintiff's

private property.

## AS AND FOR A TWENTITHIRD CAUSE OF ACTION
PUNITIVE DAMAGES STATLAND MALICIOUS ABUSE OF CRIMINAL PROCESS

[153]  Plaintiff reiterates paragraphs 1 to 152 as and if restated here in full and

completely and sues defendant Scott Statland in the punitive amount of $300,000 for

malicious abuse of criminal process in the manner described in the Twentieth Cause of

Action.

dated: 2014 Dec 19

Kris Gounden

Affirmed to before me on this _19_ day in the month of December in the year 2014

NOTARY PUBLIC

JIMENA CORRIGAN
Notary Public, State of New York
No. 01CO6085034
Qualified in Suffolk County
Commission Expires Dec. 16, 2018