ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT NEW YORK

INDEX NO. 14 CV 7411 [BMC][LB]

KRIS GOUNDEN,

            Plaintiff

   against

CITY OF NEW YORK, DETECTIVE RAYMOND
BROWN, AND SCOTT STATLAND,

            Defendants

OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT DISMISS

FILED
CLERK

**PLEASE NOTE THE ADDRESS CHANGE - 109-50 121ST, SO. OZONE PARK, N.Y. 11420**

Constitutional Malice - knowledge of falsity or reckless disregard for truth or falsity [1]

[1]   The Court should dismiss the defendant City's summary judgment motion and *sua sponte* direct liability for false arrest and imprisonment on both arrests primarily because of defendant Brown's reckless disregard of the Law of Cross-Complaints that requires, under the Fourteenth Amendment, that criminal complainants and criminal cross-complainants be investigated with an even hand [2] .

[2]   The City's attempt to focus solely on the plaintiff's role as a criminal suspect, while turning a willfully blind eye to plaintiff's clearly established role as the " first " criminal complainant, does nothing to eliminate the possibility of the lack of probable cause sufficiently plead in plaintiff's complaint and supported by the plaintiff's video [3]

---

[1] *Lieberman v Gelstein*, 80 Y 2d 429, 430

[2] *Myers v Orange County*, 157 F.3d 66, 69 [2d Cir., 1998]

[3] Exhibit 1 = A certified transcript of plaintiff's video that was in Det. Brown's possession
        at the time of Det. Brown's interview of complainant Kris Gounden

which alleges [a] Statland's plan and future vision to cause plaintiff's arrest, [b]

Statland's motive for Statland's car-door assaults against plaintiff as retaliation for

plaintiff's attempts to stop Statland lawless use of plaintiff's property and [c] Statland's

motive for Statland's car-door assaults against plaintiff as retaliation for plaintiff's

filming of Statland, [d] Evidence that the City of New York has [albeit falsely]

represented plaintiff's property as the property of the City of New York and [e] Statland's

unlawful imprisonment and terrorization of a minor for the purpose of inciting and

provoking plaintiff into unlawful physical contact.

[3]     In short, had defendant Det. Brown treated the similarly situated complainants

similarly, by taking both complainants' videos, defendant Det. Brown would have seen

and heard, and is responsible for having seen and heard a witness at the scene and

Statland's motives, opportunity, plan and unlawful conduct in an attempt to goad plaintiff

into unlawful violence.

[4]     It will be seen that a jury could reasonably and easily conclude that defendant Det.

Brown lied and made a conscious and calculated decision to do all he could to avoid

treating plaintiff's complaint in a fashion that was similarly situated to the treatment

given to Statland's complaint so that probable cause against Statland could be avoided

[the purpose of which was to enforce the City's lawless confiscation of plaintiff's

property].

[5]   Both complainants offered their own videos in support of their respective

complaints. Statland's video was taken as support for Statland's complaint. Plaintiff's

video was not taken as support for plaintiff's complaint.

[6]   Here plaintiff made a criminal complaint via a 911 call [4] [5] [6] and 51 minutes later

defendant Statland made a cross-complaint. During defendant Det. Brown's interview of

plaintiff, plaintiff reiterated his 911 call complaint [Compl. ¶ 73]. On 2012 Jul 19, after

being rebuffed several times at the 106th precinct, plaintiff filed another complaint at the

106th precinct [7] .

[7]   It is reasonable to infer that the complaint was assigned to Det. Brown. Below, this

opposition shows that had defendant Det. Brown afforded plaintiff his 14 Amendment

and state equal protection entitlements as a video-offering complainant, probable cause to

have arrested plaintiff would have been severely crippled and the D.A. would have been

hard pressed to prosecute plaintiff while having had a notarized witness, Randy Volkens

[8] , to Statland's assault against plaintiff and clear and convincing video cause to have

---

[4] Exhibit 2 = a picture taken by plaintiff of plaintiff's 911 call on 2012 Jun 12 at 2:39 pm

[5] Exhibit 3 = A picture of the police van's license number 8631 of the 106th precinct that responded to plaintiff's 911 call on 20123 Jun 12 reporting Statland's repeated car-door assaults.

[6] Exhibit 4 = A picture of plaintiff talking to the police in van license number 8631 that responded to plaintiff 911 call made at 2:39 pm on 2012 Jun 12.

[7] Exhibit 5 = Plaintiff's complaint, # 4492.

[8] Exhibit 6 = Statement of witness Randy Volkens. Notarized copy in possession of Queens County D.A. Det. Brown would have discovered Volken's observations in plaintiff's video, which appear to have been erased from Statland's video, just as Statland's property motive and Statland's filming motives and jail predictions were apparently erased off Statland's video.

arrested and prosecuted Statland for assault, unlawful imprisonment and [during that unlawful custody] endangerment of the welfare of a minor.

[8]   Early in the Complaint paragraph three clearly demonstrates that plaintiff called 911, before defendant Statland, to report defendant Statland's repeated car-door assaults on plaintiff and defendant Statland's unlawful imprisonment of plaintiff and plaintiff's son, in addition to defendant Statland's endangerment of the welfare of plaintiff's son.

[9]   " Plaintiff made a successful 911 call from 718 810 7840 at 2:39 p.m. on 2012 Jul 12. " [Compl, ¶ 57]

[10] " Defendant Det. Brown read the report the van police filed in response to plaintiff's 911 call on 2012 Jul 12 at 2:39 pm. " [Compl, ¶ 67]

[11] Unknown to plaintiff at 3:30 pm on 2012 Jul 12, defendant Statland reported to police that plaintiff assaulted and harassed defendant Statland. " [Compl, ¶ 68]

[12] Accordingly, it is undeniable that the Complaint alleges that plaintiff reported to police defendant Statland's video-taped car-door assaults on plaintiff a full fifty one minutes before defendant Statland reported plaintiff's alleged push and punch to police.

[13] It must be pointed out strongly here that " Defendant Det. Brown is at all times the detective....that *fraudulently* asserted that plaintiff's 911 call was not in the Sprint system.." [Compl. ¶ 3]

[14] The 911 call can be reasonably inferred to be absolutely in the system since the defendant City has not produced a document to the contrary. If not, who are the two

officers in the picture and what is plaintiff gesturing to the van police about on 2012 Jun 12?

[15] Either Defendant Det. Brown looked in the 911 system, saw plaintiff's 911 call and flat out lied saying that plaintiff's 911 call was not in the system or defendant Det. Brown did not look in the 911 system and lied saying he looked in the 911 system [and did not see plaintiff's 911 call in the system].

[16] Whether defendant Detective Brown saw it and lied saying he didn't see it or whether defendant Det. Brown didn't look and lied saying he looked, either alternative lie constitutes a reckless disregard for a truth that is material to the 14th Amendment requirement for an even-handed investigation of both complaint and cross-complaint [9].

[17] Even if somehow plaintiff's 911 call was miraculously not in the system [ after the two officers in van 8631 responded to plaintiff's 911] defendant Det. Brown was aware that plaintiff was making a complaint right then and there in the interview, and defendant Det. Brown was aware that Det. Brown had possession of the phone that plaintiff allegedly used to video record Statland's alleged attack.

[18] Defendant Det. Brown, thereby, recklessly disregarded the fact that Det. Brown had the phone and recklessly disregarded the fact that plaintiff alleged the phone's contents to be in video-support of Statland attacking plaintiff.

---

[9] *Myers v Orange County*, 157 F.3d 66, 69 [2d Cir., 1998]

[19] It can be reasonably inferred that plaintiff's complaint, filed at the 106th precinct, was, in all likelihood, assigned to none other than defendant Det. Brown and plaintiff's complaint filed at the 106th precinct was never given 14th Amendment or equal protection follow up by whomever it was assigned to, just as plaintiff's interview and 911 call complaints were never given 14th Amendment equal protection follow-up

[20] Statland made one complaint and had his video taken in support. Plaintiff made two complaints and had his video in support ignored twice by, most likely, Det. Brown. Did plaintiff have to make more than six-fifths more complaints than Statland to be treated as Statland was treated?

[21] Plaintiff's trial view will be that in order to appear as if defendant Statland's cross-complaint was not a cross-complaint [ but was the only complaint ] " Defendant Det. Brown lied when defendant Det. Brown told plaintiff that plaintiff's 911 call, to which van 8631 responded, was not in the system. " [ Compl. ¶ 85]

[22] With particular application to this case, the *Myers* Court pointed out that:

"[a] [second] come-[second only] served policy also runs contrary to the objectives of law enforcement to protect the public, since it inhibits collection of the fullest possible information [10] from all sources relating to a potentially criminal incident [Statland's repeated car-door assaults]. " id. at 557" [11]

---

[10] The collection of plaintiff's video was inhibited until plaintiff submitted it to the DA's office months after the arrest.

[11] *Myers at 75*

[23] And speaking directly to defendant Brown's [second]-come-[only] served investigation, the *Myers* Court flat out held that the [second]-come-[second only] served " investigation " serves no legitimate governmental interest. ".[12]

[24] " We hold that a[n] [investigation] by.. police... or ... [DA] favoring a [second] complainant over a[n][ initial one] .... without giving regard to the particular facts involved in the case violates the Equal Protection Clause of the Fourteenth Amendment. "[13] [ and presumably the State's equal protection provision in Article 1 § 11 of the Constitution of the State of New York].

[25] The *Myers* Court also concluded that a second come- second only served complaint may not be directed by a DA's Office or a Police Department. It follows then defendant Brown was " extra " in dually violated the Equal Protection Clause by investigating defendant Statland's cross-complaint on the basis of " second filed - second only served ".

[26] Defendant Brown's unequal and targeted investigation is further evidenced where the Complaint alleges that.

" Defendant Det. Brown had an opportunity to and did review defendant Statland's video during the six days from 2012 Jul 12 until 2012 Jul 18. " [Compl., ¶ 71] The City does not oppose the length of time Det. Brown had Statland's video before plaintiff's arrest on 2012 Jun 18.

---

[12] *Myers at 75*

[13] *Myers v Orange County,* 157 F.3d 66, 69 [2d Cir., 1998]

[27] However, we know defendant detective Brown did not take plaintiff's video to support plaintiff's assault claim:

" In relating plaintiff's version of the occurrences, plaintiff informed defendant Det. Brown that plaintiff had, on his person, in plaintiff's phone, a video recording of the occurrence. Defendant Det. Brown, before arrest, did not want to examine plaintiff's video, although defendant Brown examined defendant Statland's video. [Compl. ¶¶ 121-122] The City submits no document to the contrary.

[28] Because defendant Det. Brown's investigation of plaintiff's complaint was simultaneously an investigation of probable cause to arrest plaintiff on Statland's complaint, denying plaintiff's video to support plaintiff's complaint also denied probable cause to arrest plaintiff on Statland's complaint since any reasonable and even-handed officer would have taken plaintiff's video in support of plaintiff's two complaints.

[29] The Second Circuit has spoken about failing to allow video support of a complaint:

" Under New York law, "even when probable cause is present at the time of arrest, evidence could *later* surface which would eliminate that probable cause." *Cox v. County of Suffolk,* 780 F.Supp. 103, 108 (E.D.N.Y.1991); *see also Maxwell v. City of New York,* 156 A.D.2d 28, 554 N.Y.S.2d 502 (1st Dep't 1990); *Rodriguez v. City of New York,* 149 Misc.2d 295, 563 N.Y.S.2d 1004 (Sup.Ct. N.Y. County 1990). In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact [14] . *See Callan v. State,* 73 N.Y.2d 731, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988).[2] The New York Court of Appeals has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of

---

[14] That intervening fact was Brown's refusal to consider plaintiff's video in support of plaintiff's complaint

lack of probable cause [15] ." *Colon, 60 N.Y.2d at 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453* (citation omitted). " [16]

[30] Defendant Det. Brown's failure to examine plaintiff's video in support of plaintiff's complaint is a 14th Amendment failure and any reasonable person would have examined both complainants' videos to see if each video supported each complainants' complaints...the probable causes of which were mutually exclusive because if the video showed what plaintiff's complaint claimed [and it does], it showed Statland's saying while plaintiff is seated in his automobile, " You follow me around with a camera and you keep harassing me. It's going to stop....You're going to jail....I promise you that. You're going to go to jail. . I promise you. You're going to go to jail. " [17] . What would that have told a reasonable officer about Statland's motives to assault and imprison plaintiff.

[31] Statland then says: " It's not you're property...It's a public easement. It's a public easement. It belongs to the City of New York. The City has the paperwork. " [18] That is the exact language this Court heard in *Gounden v City of New York*, 10 cv 3438. It is reasonable to infer that Statland got that language from the very words of now Senator

---

[15] If you tell me you have video evidence of someone attacking you, the only reason I wouldn't want to see it, is if I didn't want to arrest the person attacking you in the video. What else could it be?

[16] *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 572

[17] Exhibit 2, Page 1,

[18] Exhibit 2, Pgs 2 - 3,

Addabo, the City of New York and actions of the Police, Fire and Buildings Departments of the City of New York

|32| If I tell you you're going to jail before you ever do anything to me, while you're peacefully sitting in your car, I could possibly have a plan in mind to jail you.

|33| The eleventh cause of action cites defendant Brown's " ...callous disregard of plaintiff's video recording that defendant Statland had announced, planned and predicted plaintiff was going to jail...." as a part of Statland's plan.

|34| Plaintiff's and Statland's video, are both in the possession of the DA, but the City submits no transcript of either video to either bolster Statland's or contradict plaintiff's video claim that defendant Statland had announced, planned and predicted plaintiff was going to jail....".

|35| To make sure we are on the same page as to the sequence of how def. Brown's investigation unconstitutionally favored defendant Statland, the Complaint implies that def. Det. Brown permitted defendant Statland to submit defendant Statland's video to def. Det. Brown well before Det. Brown called plaintiff. Plaintiff got Statland's video from the DA's office. It's in the DA's possession. Both videos are retrievable from the D.A.'s office but unpresented and not transcribed by the City.

|36|Then, defendant Det. Brown called plaintiff investigating plaintiff's " first-filed " complaint, and defendant Det. Brown proceeded directly, with his mind made up, to favor

defendant Statland by refusing to permit plaintiff to submit plaintiff's video in support of plaintiff's two complaints.

|37| Defendant Det. Brown's probable cause, at least for summary judgment purposes, is constitutionally barred and suppressible for much the same reason and in much the same way that illegally obtained drugs are barred from criminal trials for drug possession.

|38| To permit defendant Det. Brown's probable cause to stand, when it was unconstitutionally, and clearly in bad-faith, obtained, would make the Fourteenth Amendment just as meaningless as the Fourth Amendment would be if defendant Det. Brown had gone around randomly kicking in doors until he found a crack vial and permitting that vial to be submitted into evidence in a criminal trial.

|39| Det Brown is responsible for having seen and heard all in plaintiff's video.

|40| It appears to plaintiff that the Court should *sua sponte* direct liability on the issue of false arrest and imprisonment on the 2012 Jul 18 arrest, which would automatically invalidate plaintiff's arrest for criminal contempt in docket no. 2012QN038341 and imply false arrest and imprisonment liability thereon as well, leaving the remainder of the causes of action for further proceedings.

## FURTHER FACTUAL PROBABLE CAUSE CONSIDERATIONS

|41| The Court warned the defendant City, who indemnifies the acts of its agent defendant Brown |who is presently ducking a letter sent to him by the Legal Department of the Police Department of the City of New York], by Order dated 2015 Jun 15, that it

appeared to the Court that the motion would "...necessarily rely on materials outside the face of plaintiff's complaint....". The Court went on to warn the defendant City that "..the Court does not see how it could be brought under Fed.R.Civ.P. 12[b][6]. "

[42] In essence, the Court warned the defendants that its 12[b][6] motion would be dismissed if its 12[b] motion inadequately relied on "...materials outside the face of the plaintiff's complaint..." without 56.1 compliance. There is no short separate document stating what the undisputed material facts are.

[43] Physically, the City's motion also contains an Order of Protection [Exhibit B in the motion to dismiss] that is outside the complaint. On that ground, the City was required to give separate notice of the facts that are not in dispute pursuant to 56.1.

[44] But even if the Court does not consider the Order of Protection and considers the City's motion on purely 12[b][6] grounds, the Court has already intimated that the complaint sufficiently pleads the lack of probable cause.

[45] The City alleges the complaint's insufficiency stating that " Mr. Statland [ being ] loud, aggressive [and] profane...alone...are insufficient to establish a valid defense for pushing or punching Mr. Statland. " [pg 10 MTD].

[46] The City does not, as a matter of law, diminish the sufficiency of the complaint's double digit references to defendant Statland's video-taped and repeated slamming of a car door into plaintiff [19] because repeatedly slamming a car door into someone is more

---

[19] Complaint ¶s 4, 5, 52, 53, 54, 56, 61, 62, 64, 70, 83, 86, 87, 96, 97, 106, 107, 108, 109, 115, 116, 118, 120, 128, 133, 140, 141, 142, 146, 147, 149, 150, 151, The complaint is replete with 33 references to Statland's video-taped and unprovoked assault on plaintiff with a car door.

than sufficient to establish a valid defense for a citizens arrest, pushing or punching someone in the face during the attacker's assault during the attacker's unlawful imprisonment of the victim and his five year old. " It was an urgent situation involving the welfare of a child.

|47| The City does not even acknowledge that the Complaint's alleges that defendant Statland repeatedly slammed a car door into plaintiff in front of plaintiff's son. The City does not acknowledge that the Complaint alleges that defendant Statland was unlawfully imprisoning plaintiff and his five year old son.

|48| Far from charging plaintiff with assault, any reasonable officer witnessing Statland unlawfully imprisoning plaintiff and a five year old and yelling " You're raising a five year old piece of fucking garbage " ¶ 44, Compl| and repeatedly assaulting plaintiff would *minimally* have charged Statland with assault, disorderly conduct, unlawfully imprisoning and terrorizing a five year old child.

|49| The City's motion to dismiss does nothing, as a matter of law, to contradict the Complaint's sufficient allegation that Statland's cruel and neanderthal attack on the security and well-being of a five year old was part of Statland's plan to lawlessly provoke and agitate plaintiff into physical contact.

|50| The City's motion to dismiss does not, as a matter of law, make impossible that " Defendant Statland's own video records plaintiff emerging from plaintiff's vehicle and

repeatedly telling defendant Statland " Get away from me. " [20] The implication being that Statland was attacking, or at least coming uncomfortably close to, plaintiff.

[51] While the City asserts that plaintiff makes a conclusory allegation that defendant Brown " reviewed" videos on Mr. Statland's phone [ pg 10, MTD ], it is not out of the ordinary for a police officer to review a video, in the DA's possession, that allegedly supports a criminal cross-complaint. TV networks have been publishing police - reviewed videos for many years now. A video of Dylan Roof was recently reviewed and published to the public which led to his capture, so why wouldn't plaintiff's video lead to Statland's capture.

[52] But again, the City does not offer an affidavit from defendant Det. Brown that he did not review Statland's video. The City does not dispute that defendant Brown was in possession of Statland's video.

[53] The City could easily get in contact with defendant Det. Brown. Since he is not answering his mail, the City could reasonably assume he does not live where he reported he lived at retirement and stop his retirement checks. I bet he'd surface then and quickly. [ on a side note the City of New York accepted service for Brown and Statland ]

[a]   The City does not, as a matter of law, rule out that [Statland] did not make a complete and full statement to the [police] or District Attorney [21] of the fact that Statland:

[a1]  Repeatedly assaulted plaintiff with a car door

---

[20] Exhibit 2, pg 5, 7, 8

[21] Colon v NYC, 60 NY2d 78, 82-83

[a2]  Said " This filming is going to stop. "

[a3]  Said " You're going to jail. " [22]

[a3]  Said " It's not your property its the City's property. ",

[54]  The City contends that "...plaintiff has failed to plausibly allege that defendant

Brown deliberately disregarded facts known to [him] which established a valid defense.

[ See Alvarez v County of Orange, 13 civ 7301 [KMK]....SDNY] " [Motion to Dismiss,

page 10]

[55]  Defendant Det. Brown was aware of the fact that plaintiff told Det. Brown that the

phone Det. Brown confiscated from plaintiff had a video supporting plaintiff's first-

served 911 complaint. He knew that.

[56]  Defendant Det. Brown was aware of the fact that plaintiff told Det. Brown that the

phone Det. Brown confiscated from plaintiff had a video of Statland repeatedly slamming

a car door into plaintiff. He knew that too.

[57]  According to the City, whether defendant Statland first approached plaintiff from a

distance of forty yards [making Statland the aggressor], imprisoned and endangered the

welfare of plaintiff's 5 year old son by blocking the car on a publicly mapped street and

yelling loud and boisterous profanities and repeatedly assaulting plaintiff with a car door

while plaintiff repeatedly retreated, all while unlawfully imprisoning plaintiff, is

immaterial to whether or not a reasonably cautious person would believe that plaintiff

---

[22] ¶ 95, Complaint

unlawfully pushed or punched defendant Statland in the face. Plaintiff's allegations in the Complaint make probable cause much less probable than probable cause would be without the allegations and without the affidavits and video transcriptions to the contrary.

[58] It must be also noted that the City has produced no hospital record documenting a punch in the face which would rule out a denial of Statland having been punched in the face.

[59] The City cites *Ricciuti* [23] for the proposition that defendant Brown's lies and failures to examine do not diminish probable cause because " Officers...do not have a duty to investigate exculpatory defenses offered by the person being arrested. "

[60] To the contrary:

"..the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause (see *Sweet v Smith*, 42 App Div 502).[24]

[61] In plaintiff's view, any reasonable person would have examined plaintiff's video in support of plaintiff's complaint or would have examined plaintiff's video to see if Statland's video was edited or incomplete and discovered what happened before the edited version of Statland's video.

[62] What reasonable police officer would fail to examine a video that might show that the officer himself had not been reasonably cautious?

---

[23] 124 F.3d 123, 128

[24] *Colon v City of New York,  60 NY2d 78, 82*

|63| What the City's motion does not address is why it was reasonable to credit Statland's complaint over plaintiff's 911 complaint without seeing both videos of the same event?

|64| Why was it reasonable for defendant Brown to assume that plaintiff's video did not support plaintiff's complaint during defendant Brown's investigation of plaintiff's complaint?

|65| The City's motion alleges that "...nowhere in the complaint does plaintiff allege that he did not punch Mr. Statland in the face. " [page 3 MTD]. However, the complaint states very clearly " Scott Statland...*falsely* asserted that plaintiff unlawfully punched defendant Statland in the face and....*falsely* asserted that plaintiff unlawfully pushed defendant Statland. " | ¶ 4, Complaint]

|66| If the City wants to depose plaintiff on the question of whether or not plaintiff lawfully or unlawfully punched Statland in the face, a 12[b][6] motion is not the vehicle.

## PLAINTIFF'S 2012 JUL 17 ARREST

|67| The Complaint clearly alleges that it was defendant Det. Brown who ordered the 2012 Jul 17 arrest, although his partner's name is on it. It was Det. Brown's case. Officers do not usually step on other officer's cases any more than judges step on other judges decisions in the same Court.

|68| " Defendant Brown asked his partner to make the arrest on the contempt of Court Order. Defendant Brown asked his partner to sign the arrest so that it would not appear

that defendant Brown had any role in arresting plaintiff for contempt of court stemming from charges in an assault case where the assault on plaintiff was captured on video tape as perpetrated by the defendant Statland and as selectively ignored by defendant Det. Brown. " [Compl. ¶¶ 128-129]

[69] The City has not ruled out by affidavit that plaintiff's plausible allegations did not happen. In light of defendant Brown's unreasonable refusal to take plaintiff's video in support of plaintiff's complaint, defendant Brown asking a partner to sign the arrest for the purpose of diverting attention from defendant Brown has not been ruled out as a matter of law. Nor with the " non-step " on practice, could Det. Brown's unseen directive hand be ruled out as matter of law.

[70] The contempt of court charges fell when the assault charges fell. Probable cause for the contempt arrest arrest falls as a matter of law when probable cause for the initial arrest falls, because there was never competence for the contempt charges to have arisen.

## QUALIFIED IMMUNITY

[71] The summary judgment motion and this qualified immunity analysis must also keep its eye on the fact that plaintiff wore two hats, one of a criminal complainant and another of a criminal suspect.

[72] Plaintiff, as a complainant with a video, had a Fourteenth Amendment and state entitlement to be treated as every other complainant with a video is treated. A

complainant's authentic video can provide or eliminate probable cause to believe someone had or had not committed an offense.

[73]   When, as in this case, there are two complainants, with two videos, both complainants' videos can increase or eliminate probable cause to arrest either complainant. And just as Statland's video can increase or eliminate probable cause to arrest plaintiff, plaintiff's video can increase or eliminate probable cause to arrest Statland.

[74]   Implied here is that plaintiff's video eliminates probable cause to arrest plaintiff while providing abundant probable cause to arrest Statland.

[75]   The City's tunnel visioned attempt to focus its motion solely on the plaintiff's role as a criminal suspect does nothing to eliminate the " lack of " probable cause possibilities caused by defendant Det. Brown's lie about the 911 call not being in the system.

[76]   As well, City's tunnel vision approach to the plaintiff's role as criminal suspect sidesteps defendant Det. Brown's unreasonable failure to have taken the " initial complainant " plaintiff's video which tells a radically different " probable cause " story than " complainant " Statland's video tells. [25] What material story does Statland's video tell compared to the material story told by plaintiff's video.

---

[25] Exhibit 1 = A video transcription of plaintiff's video replete with Statland's unlawful imprisonment, motive, jail prediction and above all, repeated car door assaults. Although the transcription does not reflect witness Randy Volken's statements at the scene, he is clearly audible saying " Not in front of the Child. "

[77]   " The role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried. In determining whether summary

judgment is appropriate, this Court will construe the facts in the light most

favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." *Brod v. Omya, Inc., 653 F.3d 156, 164*

*(2d Cir. 2011)* (internal quotation marks and citations omitted) " [26]

[78]   In *Greenaway,* the Eastern District denied the Hempstead Defendants' motion for

summary judgment because the " ..Hempstead Defendants do not counter

Plaintiffs' [ material ] claims. " [27]

[79]   In the instant plaintiff's case, plaintiff alleged that defendant Det. Brown flat out

lied in stating that plaintiff's 911 call was not in the system. The City's motion to dismiss

has not denied the material allegation that defendant Det. Brown flat out lied in stating

that plaintiff's 911 call was not in the system.

[80]   Defendant Det. Brown's lie that the 911 call was not in the system is material to

this suit because if a jury believes that defendant Det. Brown lied about looking and not

seeing plaintiff's 911 call, for the purpose of avoiding plaintiff's video-evidence of

Statland assaulting plaintiff, then a jury could reasonably conclude that defendant Det.

Brown failed to acquire a legitimate claim on probable cause when he failed to acquire

---

[26] See Summary judgment Standard. *Greenaway v. County of Nassau,* Index No. 11 cv 2024 [WFK]
[AKT], EDNY, [2015 Apr 30]

[27] See " II. Analysis A. Parties Dispute Material Facts Regarding Plaintiff's False Imprisonment Claims.
*Greenaway v. County of Nassau,* Index No. 11 cv 2024 [WFK][AKT], EDNY, [2015 Apr 30]

the video that would have legitimately, and reasonably, determined probable cause.... or not.

[81]   " To evaluate a claim of qualified immunity, a Court must first determine if the plaintiff has alleged that the government official violated his [ clearly established ] constitutional rights.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001);  see also Hope v. Pelzer, 536 U.S. 730, 760, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). " [28]

[82]  " The Court focuses on " whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. " Saucier, 533 U.S. at 202. " [29]

[83] *Myers* clearly established that treating two similarly situated opposing complainants dissimilarly violates clearly established Fourteenth Amendment and state equal protection principles and serves " no legitimate governmental purpose ".

[84] Lying to plaintiff saying plaintiff's 911 call was not in the system that police officers responded to defrauded plaintiff out of his estate, and 14th Amendment entitlements, in his role as a complainant. Everyone knows fraud is unlawful and just plain wrong. Police are trained to arrest people for fraud. As a result, the commission of fraud by any police officer is clearly unlawful to any reasonable officer.

---

[28] *James Aikman v County of Westchester*, 491 F. Supp 2d 374, 384 [2007 Jun 03, SDNY]

[29] *Aikman*, 384

[85] Lying is not a mistake. It is a conscious mental process calculated to achieve a specific result that was calculated to be not achievable with the truth. The lie was calculated to defraud plaintiff of his 14th Amendment rights.

[86] The material questions of fact are, did defendant Det. Brown have an objective investigatory reason for lying about plaintiff's 911 call not being in the system or was he reckless in lying about having looked? Did defendant Det. Brown have an objective investigatory reason for not taking plaintiff's complaint and video? Did the officer assigned to plaintiff's precinct-filed complaint have an objective reason for not following up on plaintiff's 911 call or precinct-filed complaint number 4492?

## CONCLUSIONS

[87] Plaintiff concludes that plaintiff's equal protection rights were clearly established, both state and federal, and the facts, as a complainant and video in support were recklessly and unconstitutionally disregarded. Other than a desire not to discover evidence diminishing probable cause against plaintiff, Det. Brown's two failures to take plaintiff's video in support of plaintiff's complaint is hard to explain.

[88] Plaintiff asserts that, in this " cross-complainant " case, plaintiff's status as initial complainant is inseparable from plaintiff's rights and entitlements as a criminal suspect because the failure to afford plaintiff his equal protection rights as a complainant automatically implied a failure to act reasonably in investigating plaintiff as a criminal

suspect because plaintiff's video has a definite and measurable diminishing impact on the probable cause to have arrested plaintiff.

[89] Det. Brown, as was the 106th precinct in general, was aware of the property dispute having received numerous complaints from neighbors as *Gounden v City of New York*, 10 cv 3438 indicates.

[90] Det. Brown actions and failures advanced and protected the City's and Statland's common agenda in continuing to lawlessly trespass plaintiff's privately paid for property, which the City Charter forbids in L. 1962, ch. 998, § 202 and the property for which the City still has not paid for in either rent or outright purchase.

[91] Probable cause on plaintiff's second arrest fell when Det. Brown refused to take plaintiff's video in support of plaintiff's complaint and the criminal case was dismissed after the State calculatedly violated plaintiff's speedy trial grounds.

[92] The City has not given a document demonstrating the date of Det. Brown's retirement. The City, who is certainly capable of serving its witness-complainant Scott Statland at his last known address or work place, accepted for Statland and should be held liable or compelled to serve the witness and officer the City relied on.

[93] In the alternative, the City should be compelled to deliver to plaintiff Scott Statland's address and phone number as he is hiding his presence behind the power of the City.

[94] The Court should issue an immediate Order directing the City to consult and serve witness Statland, since his own words use the City's property-owning statements.

[95]     In addition, plaintiff requests the Court dismiss the City's motion to dismiss, find that the City's acceptance of the Complaint for Det. Brown and Statland constitute proper service.

[96]     The Court should find the absence of and liability for a lack of probable cause as a matter of the law of the 14th Amendment and Article 1 § 11 of the New York State Constitution and issue an Order directing the case to proceed on the other causes of action.

Respectfully,

Kris Gounden
109-50 121 St.
So. Ozone Park, NY
11420

DATED: 2015 Jul 21

Affirmed to before me on this 21st day of July in the year 2015

_____
NOTARY PUBLIC

RAVINDERPAL SINGH VIRDI
Notary Public, State of New York
No. 01VI6158276
Qualified in Queens County
Commission Expires 12-26-18

Exhibit 1 = A certified transcript of plaintiff's video that was in Det. Brown's possession
    at the time of Det. Brown's interview of complainant Kris Gounden

Exhibit 2 = A picture, taken by plaintiff, of plaintiff's cell phone having dialed 911,
    on 2012 reporting Statland's assault against plaintiff

Exhibit 3 = A picture of the police van's license number 8631 of the 106th precinct that
    responded to plaintiff's 911 call on 20123 Jun 12 reporting Statland's repeated
    car-door assaults

Exhibit 4 = A picture of plaintiff talking to the police in van license number 8631 that
    responded to plaintiff 911 call made at 2:39 pm on 2012 Jun 12.

Exhibit 5 = Complaint filed at the 106th Precinct against Statland 2012 Jul 19

Exhibit 6 = Statement of witness Randy Volkens. Notarized copy in possession of Queens
    County D.A.

EXHIBIT   I

```
CRIMINAL COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------x
KRIS GOUNDEN,                          Docket Number

                    Plaintiff,       2012 QNO 32 967

         - against -                 2012 QNO 38341

SCOT STATLAND,

                    Defendant.
-----------------------------------x

                    Date:      June 12, 2012
                    Location:  160th Avenue/102nd
                               Howard Beach, NY
                    Time:      Approximately 2:10pm
```

**TRANSCRIPTION PLUS, INC.**
200-10 100th Avenue
Hollis, New York 11423
(347) 592-9672

1              MR. STATLAND:  You follow me around with a

2     camera and you keep harassing me.

3              MR. GOUNDEN:  Really?  Really?

4              MR. STATLAND:  Okay?

5              MR. GOUNDEN:  Okay.

6              MR. STATLAND:  It's going to stop.  You're going

7     to go to jail.

8              MR. GOUNDEN:  You walk to me now.  You just

9     walked to me.

10             MR. STATLAND:  Okay?  You're going to go to

11    jail.

12             MR. GOUNDEN:  Okay.

13             MR. STATLAND:  Alright?  I promise you that.

14             MR. GOUNDEN:  You just walked and approached me.

15             MR. STATLAND:  I promise you.

16             MR. GOUNDEN:  Okay.

17             MR. STATLAND:  You're going to go to jail.

18             MR. GOUNDEN:  Okay.  Well, stop driving on my

19    property every day.

20             MR. STATLAND:  It's not your property.

21             MR. GOUNDEN:  It's not?

22             MR. STATLAND:  It's a public easement.

23             MR. GOUNDEN:  Whose property is it?

24             MR. STATLAND:  If you think it's your property

25        --

1              MR. GOUNDEN:  Whose property is it?

2              MR. STATLAND:  It's a public easement.

3              MR. GOUNDEN:  You have paperwork?

4              MR. STATLAND:  It belongs to the City of New

5      York.

6              MR. GOUNDEN:  You have paperwork?

7              MR. STATLAND:  Yeah.

8              MR. GOUNDEN:  You do?

9              MR. STATLAND:  The City has paperwork.

10             MR. GOUNDEN:  Where is it?

11             MR. STATLAND:  It belongs to the City of New

12     York.

13             MR. GOUNDEN:  Prove it to me.

14             MR. STATLAND:  Okay?  I don't walk around with

15     paperwork.

16             MR. GOUNDEN:  You trespass on my property every

17     day.

18             MR. STATLAND:  I'm not an asshole like you.

19             MR. GOUNDEN:  Excuse me?

20             MR. STATLAND:  Okay?  I'm not an asshole like

21     you.

22             MR. GOUNDEN:  I have a five year old here.

23             MR. STATLAND:  (Yelling) Hello five year old!

24     Hello mail thief!  Okay?

25             MR. GOUNDEN:  Hello what?

1          MR. STATLAND:  Mail thief.

2          MR. GOUNDEN:  What did you call him?

3          MR. STATLAND:  A mail thief.

4          MR. GOUNDEN:  What did he steal from you?

5          MR. STATLAND:  Mail.  Okay?  Mail.

6          MR. GOUNDEN:  You have a problem, huh?

7          MR. STATLAND:  Yeah.

8          MR. GOUNDEN:  That's my son.  What are you going

9    to do, huh?  What are you going to do?

10         MR. STATLAND:  Good.  I'm glad it's your son.

11         MR. GOUNDEN:  What are you going to do?

12         MR. STATLAND:  I'm glad it's your son.

13         MR. GOUNDEN:  What are you going to do?  What

14   are you going to do, huh?

15         MR. STATLAND:  He's a thief.  Just get away from

16   me, alright?

17         MR. GOUNDEN:  You pushed me?

18         MR. STATLAND:  Yeah, I pushed you.

19         MR. GOUNDEN:  You pushed me?

20         MR. STATLAND:  Yeah, I pushed you.

21         MR. GOUNDEN:  Go ahead.  Go ahead.  Go ahead.

22   Take a swing at me.

23         MR. STATLAND:  What are you going to do?  You

24   think I'm afraid of you, huh?  Huh?  You think I'm afraid

25   of you?

1            MR. GOUNDEN:  Get away from me, man.

2            MR. STATLAND:  Don't fucking push me.

3            MR. GOUNDEN:  What's wrong with you, huh?

4            MR. STATLAND:  Don't fucking push me you piece

5      of shit.

6            MR. GOUNDEN:  Get away from me.  Get away from

7      me.

8            MR. STATLAND:  Your son is a fucking thief.

9            MR. GOUNDEN:  My son's a thief?

10           MR. STATLAND:  Your son's a fucking thief.

11           MR. GOUNDEN:  Huh? Huh? Huh? Huh?

12           MR. STATLAND:  Yeah, your son is a fucking

13     thief.

14           MR. GOUNDEN:  Who do you think is afraid of you?

15     Who do you think is afraid of you, huh?

16           MR. STATLAND:  I don't give a shit who the hell

17     or what the fuck you are.

18           MR. GOUNDEN:  Huh?  Apparently you don't.  Get

19     away from me, alright?  That's my son over there.

20           MR. STATLAND:  You know what?

21           MR. GOUNDEN:  Alright?

22           MR. STATLAND:  It's a public street.  I can

23     stand wherever the fuck I want.

24           MR. GOUNDEN:  You walked over to me.  You walked

25     over to me.

1    MR. STATLAND:  I can stand wherever the fuck I
2    want.
3              MR. GOUNDEN:  I got a problem with you.
4              MR. STATLAND:  Good, have your fucking problem.
5              MR. GOUNDEN:  Alright?  Alright?  You fucking
6    pedophile.  Pedophile!
7              MR. STATLAND:  Take your problem and shove it up
8    your fucking ass.
9              MR. GOUNDEN:  Pedophile!
10             MR. STATLAND:  Really?  You're making claims you
11   can't back up, motherfucker.
12             MR. GOUNDEN:  Alright?  Yeah.  Yeah.
13             MR. STATLAND:  You're making claims you can't
14   fucking back up.
15             MR. GOUNDEN:  You walked up to me
16   (unintelligible).  This is my car.
17             MR. STATLAND:  Did I touch your fucking car?
18             MR. GOUNDEN:  (Inaudible).
19             MR. STATLAND:  Did I touch your fucking car,
20   huh?  Did I touch your fucking car?
21             MR. GOUNDEN:  Do something.  Do something.
22             MR. STATLAND:  You (inaudible).
23             MR. GOUNDEN:  Go ahead.
24             MR. STATLAND:  I don't want to fucking touch
25   you.

1         MR. GOUNDEN:  Go ahead.

2         MR. STATLAND:  You're a fucking piece of

3    garbage.

4         MR. GOUNDEN:  Go ahead do something.

5         MR. STATLAND:  You're a fucking piece of

6    garbage.

7         MR. GOUNDEN:  Get out of my face.

8         MR. STATLAND:  And you're raising another --

9         MR. GOUNDEN:  Get out of my face.

10        MR. STATLAND:  -- little five year old --

11        MR. GOUNDEN:  Get out of my face.

12        MR. STATLAND:  -- fucking piece of garbage.

13        MR. GOUNDEN:  Do something.

14        MR. STATLAND:  You're raising another five year

15   old piece of garbage.

16        MR. GOUNDEN:  What are you doing?  What are you

17   doing?  Do something.

18        MR. STATLAND:  You're a fucking piece of shit.

19        MR. GOUNDEN:  (Inaudible).

20        MR. STATLAND:  You're a piece of shit.

21        MR. GOUNDEN:  You're the one who's full of crap,

22   alright?  Go ahead.

23        MR. STATLAND:  You're a fucking piece of shit.

24        MR. GOUNDEN:  Well do something.  Do something.

25   Go ahead (unintelligible).

Kris Gounden v. Scot Statland                    8

1            MR. STATLAND:  I don't live in a fucking

2       (inaudible).

3            MR. GOUNDEN:  Go ahead.  You walked over to me.

4       What are you going to do, talk to me?

5            MR. STATLAND:  Guess what?

6            MR. GOUNDEN:  This is what you're going to do?

7       You're going to walk over to me?

8            MR. STATLAND:  Guess what?

9            MR. GOUNDEN:  Do something.

10           MR. STATLAND:  I'm not going to fucking touch

11      you (inaudible).

12           MR. GOUNDEN:  Alright then get away from me.

13           MR. STATLAND:  This is the fucking street.

14           MR. GOUNDEN:  No.

15           MR. STATLAND:  I can stand wherever the fuck I

16      want.

17           MR. GOUNDEN:  You walked over to me.

18           MR. STATLAND:  This is a public fucking street.

19           MR. GOUNDEN:  You walked --

20           (End of recording)

21

22                          - o0o -

23

24

25

9

## C E R T I F I C A T E

I, Diane Goodwyn, certify that the foregoing
transcript was prepared using the required transcription
equipment and is a true and accurate recording to the best of my
ability.

Signature _Diane Goodwyn_                Transcription Plus, Inc.

200-10 100th Avenue

Hollis, NY 11423

Date:   July 2, 2015

EXHIBIT    2



EXHIBIT    3

EXHIBIT 4



EXHIBIT   5



INCIDENT INFORMATION SLIP

# WELCOME TO
# 106 PRECINCT
## 103-53 101 STREET, OZONE PARK, NY 11417
### 718.845.2211

DATE: 7/19/12

We hope that your business with us was handled satisfactorily.  Your particular matter has been assigned the following number(s):

Complaint Report # 4492    Accident Report # _____    Aided Report # _____

Reporting MOS: PI Caugiat80    Date of Occurrence: 6/12/12  Time: 1439
              (Rank)    (Name)

Location of Occurrence: 102st & 160 Ave.

Crime Classification: Harassment

Please keep this report for future reference.  If you need any further assistance fell free to contact us at 718.845.2231.  Please let us know if you have any suggestions on how we can better serve you.  As you may already know, we will provide you with a crime prevention survey of your residence or business.  Please ask for more information on this and other crime prevention initiatives.  Our goal is to make you and your property safe.

## COURTESY-PROFESSIONALISM-RESPECT

## REMEMBER: CALL 911 FOR  EMERGENCIES ONLY

PLEASE NOTE:

1. *Accident reports can be picked up Monday thru Friday 900 am to 500 pm.  A money order only in the amount of $10.00 will be required.*
2. *To obtain an Accident Report that occurred thirty (30) days or more, please forward a request and a $10.00 money order to: DEPT OF MOTOR VEHICLES, PUBLIC SERVICES BUREAU, EMPIRE STATES PLAZA, ALBANY, NEW YORK 12228.*

EXHIBIT   6

Randy Volkens
16 Church Street
Howard Beach, NY  11414


Richard Brown
Queens District Attorney
Queens County, New York

Re: People v Kris Gounden
Case Number -2012QN032967
            2012QN038341

Dear Mr. Brown,


I, Randy Volkens, was present on 2012 Jun 12 at about 2:20 p.m.
when a confrontation involving Kris Gounden and Scott Statland took place.

I observed Mr. Gounden seated/driving in a green/blue 4door car driving on 160ave and Mr. Statland walking/running across 102 street stopping Mr Gounden in traffic.Mr Statland had his head at and in the drivers side window. Mr. Statland was yelling telling Mr. Gounden that his son, who was seated in the back seat, was no good (piece of shit, you mail thief, little fucker ).

I observed Mr Statland pushing Mr Gounden yelling "take a swing, take a swing" to Mr. Gounden. At no time did Mr. Gounden throw a punch at Mr. Statland. Mr.Statland appeared to be drunk.

Mr Gounden left the scene with Mr Statland (on the sidewalk) with me. He was  cursing and yelling out loud. At no time did he complain about being hit or did I observe any sign of Mr Statland being hit in the face or anywhere else. I observed Mr Statland pushing and hitting Mr Gounden by pushing his car's door into Mr Gounden's chest.


_____
Witness 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------- X

KRIS Gounden

                                Plaintiff,

                  -against-

City of New York, Det. Brown,
Et al.

                                Defendant.

------------------------------------------- X

**ORIGINAL**

Affirmation of Service

14 CV 7411 (BMC)(LB)

I, Posr A. Posr_____, declare under penalty of perjury that I have

served a copy of the attached opposition to motion for summary Judgment

upon all above named defendants at Corporation Counsel

whose address is: 100 Church St., N.Y., N.Y. [Park Place entrance

Dated: 2015 Jul 21
           , New York

                         Posr A Posr
                         Signature

                         703 N. Orange St. #204
                         Address

                         Wilmington, De 19801
                         City, State, Zip Code

FILED
CLERK
2015 JUL 21 PM 4:37
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK