UNITED STATES DISTRICT COURT  C/M
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                                              :

KRIS GOUNDEN,

                              Plaintiff,              **MEMORANDUM DECISION &**
                                                                              **ORDER**
                      - against -

                                                                              14 Civ. 7411 (BMC)

The CITY of NEW YORK, et al.,

                            Defendants.
-------------------------------------------------------- X

**COGAN,** District Judge.

Plaintiff *pro se* brought this action alleging, among other things, false arrest, malicious prosecution, and selective enforcement pursuant to 42 U.S.C. § 1983 and state law. The defendants are the City of New York, one police officer, and one private citizen. Before me is the City's motion to dismiss the Complaint for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

This case, which is not plaintiff's first action before me, has its roots in a long-running property dispute between plaintiff, some of his neighbors, and defendant the City of New York involving a section of plaintiff's property in Howard Beach, Queens County to which the City claims an easement. The following facts are taken from the Complaint, and are assumed to be true for the purpose of deciding the instant motion. Defendant Statland is plaintiff's neighbor and apparently a beneficiary of the City's purported easement. Since 2006, plaintiff "has had numerous contacts with police officers from the 106th precinct regarding neighbors' trespasses and plaintiff's attempt to express control and dominion over" the disputed section of property.

On June 12, 2012, plaintiff was seated in his car at a stop sign, accompanied by his five-year-old son, a few blocks from his property. Defendant Statland recognized him and approached the car. Presumably because he anticipated a confrontation, Statland began filming plaintiff with a cell-phone camera as he approached the car. Words were exchanged, and plaintiff apparently exited his car at some point, because he alleges that "as plaintiff was retreating into plaintiff's vehicle, defendant Statland slam[med] plaintiff's car door into plaintiff's chest and legs preventing plaintiff from entering plaintiff's vehicle" and that Statland "repeatedly slammed a car door into plaintiff's chest and legs."

After that, further words were exchanged, some directed at plaintiff's young son. Plaintiff emerged from his vehicle (presumably for the second time), and Statland "order[ed]" plaintiff to "hit me" and "go ahead and hit me." The Complaint is somewhat ambiguous on what happened immediately thereafter, but it is the City's contention that plaintiff punched Statland in the face, and plaintiff has not unambiguously denied it, perhaps suggesting that any punch was justified and therefore lawful.

Plaintiff returned to his home and called 911 "to report defendant Statland's assault," and a police van responded. Plaintiff offered the responding officers his own video of the incident, but they "refused" to view it. The officers knocked on Statland's door, but he did not answer. The police conducted no further investigation of his accusation against Statland.

Later the same day, Statland also reported the incident to police. Statland "falsely asserted that plaintiff unlawfully punched defendant Statland in the face and . . . falsely asserted that plaintiff unlawfully pushed defendant Statland." Defendant Brown, a detective, at some point reviewed Statland's own video of the incident which "clearly showed defendant Statland's assault on plaintiff . . . ."

2

Six days later, on June 18th, Brown called plaintiff and asked him to come to the precinct in connection with a criminal investigation. Plaintiff did so. Plaintiff "related the events of 2012 Ju[ne] 12 to defendant Det. Brown." He told Brown that he had called 911 on the day of the incident, but Brown informed him that the call "was not in the system" and that he was unaware of the call or any resulting investigation. Brown placed plaintiff under arrest, and charged him with assault.

Plaintiff was arrested again, by another member of the 106th precinct, on July 17, 2012, for being in contempt of an order of protection by telling defendant Statland that "[t]his is not over m\_\_\_f\_\_\_\_."

The criminal charges against plaintiff have since been dismissed.

## DISCUSSION

*Pro se* complaints are held to less stringent standards than those drafted by attorneys, and I am required to read the plaintiff's pro se complaint liberally, interpreting it as raising the strongest arguments it suggests. See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197 (2007). The complaint must nevertheless contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937 (2009) (citations omitted).

### I.

The City's brief in connection with the instant motion purports not to be made on behalf of the individual defendants. Nevertheless, much of its argument relates to defendant Brown. This is because the sufficiency of plaintiff's allegations against the City depend in large part on

the sufficiency of his allegations that defendant Brown's conduct constituted an underlying constitutional violation or common-law tort.

In addition, on a motion to dismiss, where there are issues concerning a non-moving defendant that are "substantially the same as those concerning" the moving defendant, and where the plaintiff has been given a full opportunity to make out his claim, *sua sponte* dismissal of a cause of action under Rule 12(b)(6) is appropriate. See <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 26 n.6 (2d Cir. 1990). I have therefore considered the parties' arguments to the extent that they bear on individual liability, and dismiss certain claims against the individual defendants as set forth below.

Plaintiff styles this action largely as one for false arrest. To the extent the Complaint is so construed, it fails to state a claim. Under both § 1983 and state law, probable cause is a complete defense to a claim for false arrest. See <u>Weyant v. Okst</u>, 101 F.3d 845 (2d Cir. 1996). Probable cause "is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." <u>Singer v. Fulton Cnty. Sherriff</u>, 63 F.3d 110, 119 (2d Cir. 1995). When an officer is advised of a crime by a person claiming to have been the victim, he has probable cause to arrest. See <u>id.</u> Police officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." <u>Krause v. Bennett</u>, 887 F.2d 362, 372 (2d Cir. 1989). The arresting officer has no duty "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." <u>Jocks v. Tavernier</u>, 316 F.3d 128, 135-36 (2d Cir. 2003).

4

Plaintiff does not dispute – in fact, he himself alleges – that Brown arrested him after Statland had advised Brown that plaintiff had punched him in the face. It is not entirely clear whether plaintiff disputes this accusation or not, but that is irrelevant to probable cause, because plaintiff does not allege facts or circumstances that would have constituted reason for Brown to doubt its veracity. See Singer, 63 F.3d at 119. Brown therefore had probable cause to arrest plaintiff for assault on this basis, without further inquiry into any possible justification or defense.

For the same reasons, plaintiff fails to state a claim for false arrest in connection with his July 17, 2012 arrest. Plaintiff does not allege or argue that that he did not confront Statland, only that the order of protection was not a proper basis to arrest him because his earlier arrest (in connection with which it was issued) was not based on probable cause. Because there was probable cause for his first arrest, I need not consider whether plaintiff's legal theory is valid.

In addition, "a malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest." Carson v. Lewis, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999). Plaintiff has alleged no such facts, and therefore has not stated a claim for malicious prosecution.

## II.

The conclusion that plaintiff has failed to sufficiently allege that he was arrested without probable cause does not mean that he has not stated any claim against Brown. Therefore, although it is appropriate to dismiss the claims against him for false arrest and malicious prosecution *sua sponte*, I do not hold that he is entitled to dismissal from this case.

Specifically, plaintiff also alleges that Brown "selectively" arrested him, *i.e.*, that Brown did not make an arrest in connection with plaintiff's accusation that Statland, among other things, assaulted him by striking him with a car door. The Complaint in this case suggests that this difference in treatment of the two criminal complaints was "for the purpose of enforcing the City of New York's unconstitutional policy of seizing private land." Distilled to its essence, what plaintiff is really saying is that Brown deliberately singled him out for arrest, while turning a blind eye to his neighbor's crime against him, because Brown and others at the 106th precinct support the City's efforts to force plaintiff to concede the easement.

This claim arises under the Equal Protection Clause, although plaintiff has not framed it perfectly.[1] First and foremost, it is important to note that an equal protection claim of this variety does not serve to vitiate probable cause for the arrest. Simply put, a false arrest claim asserts that a plaintiff was arrested, and that there was insufficient reason to believe that he had committed a crime. An equal protection claim of this variety asserts that regardless of what plaintiff did, *someone else who should also have been arrested was not*, and that there is insufficient explanation for the difference in treatment.

A plaintiff may show an equal protection violation on a theory of selective enforcement if he was: (1) selectively treated by law enforcement as compared with others similarly situated, and (2) that such selective treatment was based on "impermissible considerations such as . . . malicious or bad faith intent to injure a person." Latrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994).

---

[1] In support of his equal protection claim, in his opposition brief, plaintiff relies exclusively on Myers v. Orange Cnty., 157 F.3d 66 (2d Cir. 1998). Plaintiff's reliance on Myers is misplaced. That case stands for the narrow proposition that a "first-come first-served" policy of investigating cross complaints intended to ensure the "efficient operation of a DA's office and the prompt resolution of investigations" bore "no rational relationship to the legitimate governmental interest in impartial law enforcement" and therefore violated the Equal Protection Clause. See id. at 74-76. In this case, plaintiff does not argue, and could not seriously argue, that defendant Brown acted in accordance with any NYPD policy concerning the priority given to cross complaints, or gave preference to defendant Statland's complaint because it was lodged second in time.

6

With respect to the first requirement:

> Similarly situated does not mean identical, but rather a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, to the extent that an objectively identifiable basis for comparability exists. To satisfy this less-demanding test [than identicality] . . . plaintiffs must identify comparators whom a prudent person would think were roughly equivalent, but plaintiffs need not show an exact correlation between themselves and the comparators. Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

Best v. New York City Dep't of Correction, 14 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (quotation and alternations omitted).

Here, plaintiff has alleged that he was arrested for punching Statland, but that Statland was not arrested for "repeatedly slamming" a car door into his chest and legs. In the absence of any other explanation for the fact that one led to an arrest and the other did not, the seriousness of these accusations are similar enough to support the conclusion that plaintiff and Statland were treated differently under circumstances that were "roughly equivalent."

With respect to the second requirement, plaintiff alleges that Brown treated him less favorably because of his previous disputes with his neighbors and his prior "attempt[s] to express control and dominion over" the disputed area of his property because Brown shares the view held by the City and by plaintiff's neighbors that the City is entitled to an easement. This is sufficient, given the liberal pleading standard to which *pro se* parties are held, to satisfy the requirement that plaintiff plead a "malicious or bad faith intent to injure" him.

I note, in addition, that there is no reason within the four corners of the Complaint to surmise that plaintiff's history of police contact is of his own making. All indications, in fact, are that plaintiff has been at the center of disputes with his neighbors and police because he has

7

enforced his valid property rights, and it appears that the City's claim to an easement is far from a foregone conclusion.[2]

My determination that plaintiff has stated a claim for selective arrest should not be confused with a holding that plaintiff has stated a "class of one" equal protection claim, see Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000), because he alleges that Brown did not sufficiently investigate plaintiff's accusation against Statland, for example, by refusing to look at plaintiff's cell phone video. First, in order to succeed on such a claim, a plaintiff must show an "extremely high" level of similarity between himself and his comparator. Best, 14 F. Supp. 3d at 352. Plaintiff has not sufficiently plead such similarity. Second, the appropriateness of a class-of-one claim in the context of a law enforcement officer's discretionary decision-making has been cast into significant doubt in this Circuit and others. See, e.g., Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135 (2d Cir. 2010).

Finally, and in any event, plaintiff has not alleged that the video he proffered to Brown depicted anything exculpatory. Most courts to consider the requirements of a class-of-one claim do not expressly articulate a requirement that the differential treatment cause harm. However, I think – as other courts appear to have assumed – that it goes without saying. See, e.g., Intralot, Inc. v. McCaffrey, No.11-cv-08046, 2012 WL 4361451, at *3 (N.D. Ill. Sept. 21, 2012) (articulating elements of a class-of-one claim under Olech to include an allegation that the plaintiff "suffered harm as a result of the state's actions").

---

[2] Plaintiff alleges that the City "has instituted a lawsuit against plaintiff claiming part of lot 162 is eased upon as a public street." That likely refers to the proceeding recently before the Appellate Division in City of New York v. Gounden, 131 A.D.3d 560, 15 N.Y.S.3d 206 (2nd Dep't 2015), of which I take judicial notice. See Randolph v. Vaugh, No. 05-cv-3108, 2006 WL 416398, at *3 n.1 (S.D.N.Y. Feb. 17, 2006) (collecting cases). If so, it appears that the City has so far been unsuccessful in showing that plaintiff is not entitled to exercise control over this section of his property.

**III.**

Because plaintiff has not stated a claim against Brown for common-law false arrest or malicious prosecution, he also cannot state a claim against the City on a theory of *respondeat superior* based on those common law claims. With respect to his federal claims, including his equal protection claim, which does not have a common-law analogue, plaintiff has failed to make any nonconclusory factual allegation of a municipal policy or custom that would support a claim against it under § 1983 pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).[3] He has therefore failed to state a claim against the City of New York, and it is dismissed from this action.

**IV.**

The City, in a footnote, asks me to quash service as to Statland and Brown and to dismiss the claims against them pursuant to Fed. R. Civ. P. 4(m) – presumably meaning that I should do so *sua sponte*, as is the City's practice to request, because the City does not purport to appear on their behalf. With respect to Brown, the City asserts in its footnote "upon information and belief" that Brown had retired from the NYPD by the time that plaintiff served process on the 106th precinct. There is no proof offered as to this and I disregard it.

Statland and Brown are in different positions both with respect to service and the remaining claims against them. The docket entry line shows service on the City, Statland, and Brown, but the affidavits themselves do not. Although Statland's name is listed on the affidavit

---

[3] Plaintiff appears to suggest, in his opposition, that his equal protection claim arises under the New York State Constitution as well as under the United States Constitution. It is a common view among District Courts in this Circuit, however, that there is no right of action under the New York State Constitution for claims that can be brought under § 1983. See, e.g., Flores v. City of Mount Vernon, 41 F. Supp. 2d 439 (S.D.N.Y. 1999) (citing Brown v. State, 89 N.Y.2d 172, 652 N.Y.S.2d 223 (1996)). Even if I am not bound by the cases so holding to dismiss any state equal protection claim that plaintiff may have, they provide ample justification for declining to exercise supplemental jurisdiction over it.

9

that purports to show service on Brown, there is no other indication at all that any attempt was made to serve him. Service on Brown was purportedly effected by leaving the summons and complaint and with another police officer at the precinct where Brown worked (or from which he had retired, according to the City's "information and belief").

The claims against Statland are dismissed for two reasons. First, I see no effort by plaintiff to effect service on Statland and the time to do so under Federal Rule of Civil Procedure 4(m) has passed. Second, since Statland is not a state actor, there are no valid federal claims against him, and the only way I could hear common law claims against him is pursuant to my supplemental jurisdiction. I decline to exercise it. The nature of the dispute between plaintiff and Statland is who did what to whom. Their ongoing feud would overshadow or at least compete with the very separate inquiry of whether Brown acted with an improper purpose in choosing Statland's story over plaintiff's story, in which the actual fixing of fault between them would not matter. The separate claims and elements would make the trial confusing and I therefore decline supplemental jurisdiction as a matter of discretion under 28 U.S.C. § 1367.

With regard to Brown, plaintiff contends, consistent with the affidavit of service that he filed on March 24, 2015, that the NYPD accepted service on his behalf. By this, he appears to mean that another police officer, "P.O. Jiminez," as identified in the affidavit of service, acknowledged receipt of the summons and complaint. The fact that Jimenez did not put up his hands and refuse to take the papers – indeed, even if he signed for the papers or went even further and said "I accept these on behalf of Detective Brown" – does not constitute valid service absent specific authorization from the individual being served.

Under Federal Rule of Civil Procedure 4(e), since plaintiff did not serve Brown at his home (Fed. R. Civ. P. 4(e)(2)(B)), and Jimenez was not appointed by law to accept service (Fed.

10

R. Civ. P. 4(e)(2)(C)), the only way that service might be valid was if it was made pursuant to state law (Fed. R. Civ. P. 4(e)(1)). The only state law provision that might apply is N.Y. C.P.L.R. § 308. But that provision has several additional requirements for substitute service which plaintiff has not met.

Having balanced the applicable considerations under Rule 4(m), I am not inclined to accept the City's invitation to dismiss the claims against Brown under Rule 4(m) *sua sponte* in a *pro se* case where plaintiff's remaining claim may rise or fall depending on whether service can be effected. Plaintiff is given 30 days to effect valid service of a summons and complaint on Brown, failing which this case shall be dismissed.

## CONCLUSION

The City of New York's [19] motion to dismiss is granted to the extent set forth above. Plaintiff's claims against defendant Statland are dismissed *sua sponte* pursuant to Rule 4(m) and the Court's discretion to decline to exercise supplemental jurisdiction. Plaintiff's claims against Brown are dismissed, *sua sponte*, pursuant to Rule 12(b)(6), except for the claim for selective enforcement, that claim to continue subject to plaintiff effecting valid service on Brown within 30 days. The case is returned to Magistrate Judge Bloom for such pretrial proceedings as she deems appropriate.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
    October 2, 2015